**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CHARLES ANDERSON,
                          Plaintiff,

   v.                                       No. 05-CV-1452
                                                        (LEK/DRH)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

---

**APPEARANCES:**                            **OF COUNSEL:**

ERWIN, McCANE & DALY               THOMAS C. ERWIN, ESQ.
Attorney for Plaintiff
23 Elk Street
Albany, New York 12207

HON. GLENN T. SUDDABY            WILLIAM H. PEASE, ESQ.
United States Attorney for the        Assistant United States Attorney
  Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

     Plaintiff Charles Anderson ("Anderson") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act. Anderson moves for a finding of disability and the Commissioner cross-moves for a judgment on the pleadings. Docket Nos. 8, 9. For the reasons which follow, it is

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

recommended that the Commissioner's decision be affirmed.

## I. Procedural History

On March 5, 2004, Anderson filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 80-82.[2]  That application was denied on April 19, 2004.  T. 68-73.  Anderson requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ James Pileggi on October 4, 2004.  T. 36-73.  In a decision dated February 24, 2005,  the ALJ held that Anderson was not entitled to disability benefits.  T. 11-20.  On March 2, 2005, Anderson filed a request for review with the Appeals Council.  T. 9-10.  The Appeals Council denied Anderson's request for review on October 25, 2005, thus making the ALJ's findings the final decision of the Commissioner.  T. 5-8.  This action followed.

## II. Contentions

Anderson contends that the ALJ erred when he failed to (a) find either of his physical impairments severe enough to constitute a listed impairment, (b) properly credit his subjective complaints of pain, and (c) find the record deficient of substantial evidence to conclude Anderson could continue with his regular work.  The Commissioner contends that there was substantial evidence to support the determination that Anderson was not disabled.

---

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 3.

### III. Facts

Anderson is currently fifty-five years old and has a high school education. T. 40. For the last fifteen years, Anderson worked as a senior computer operator. T. 41. Anderson alleges that he became disabled on October 30, 2003 from chronic low back pain due to lumbar spondylosis[3] and right knee pain from a torn meniscus.[4] T. 88.

### IV. Standard of Review

#### A. Disability Criteria

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v.

---

[3]Spondylolysis is the "dissolution of a vertebrae." DORLAND'S ILLUSTRATED MED. DICTIONARY 1563 (28th ed. 1994) [hereinafter "DORLAND'S"].
[4]"[O]ne of the crescent-shaped disks of fibrocartilage attached to the superior articular superior surface of the tibia." DORLAND'S 1012..

Barnhart, No. -4 Civ. 9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the

decision. Berry, 675 F.2d at 467. Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. 42 USC § 405(g) (2006); Halloran, 362 F.3d at 31.

## V. Discussion

### A. Medical Evidence

Anderson alleges that he became disabled on October 30, 2003 due to chronic low back pain with osteoarthritis and a subsequent meniscus tear in his right knee. T.135-36, 178. Anderson was examined by orthopedist Dr. Neil Colman, presenting with low back pain, a few instances of radiating pain down his leg, and a history of osteoarthritis. T. 134-36. Anderson underwent physical therapy, was prescribed anti-inflammatories, and showed improvement at subsequent visits. T.133, 134. Dr. Colman diagnosed low back

pain and recommended an MRI.  T. 133.  The January 2004 MRI showed diffuse disc bulging at L3-L4 and L4-L5, a probable annular tear at L3-L4, and a disc herniation at L5-S1.  T.128-29.  Despite the disc bulges and herniation, there was no central narrowing or foraminal narrowing[5] noted.  Id.

This opinion was later confirmed on two occasions.  The first was on January 20, 2004 by Nurse Practitioner Lynn Fabre of the St. Peter's Spine Center, who concurred that there was no central or foraminal narrowing and diagnosed Anderson with lumbar spondylosis.[6]  T. 145.  The second was on April 6, 2004 by consultant Dr. Amelita Balagtas, who diagnosed Anderson with low back pain and specifically noted that (a) there was no disc space narrowing, spondylolisthesis[7] or spondylolysis, (b) the height of the vertebrae remained well maintained, and (c) the pain was neither due to a muscoskeletal origin nor discogenic disease.  T. 161-62.  Additionally, second consultative examinations with Dr. Robert Cheney on September 9, 2004 and rheumatologist Dr. Neal S. Greenstein on March 31, 2005 and May 3, 2005, also led to diagnoses of low back pain secondary to degenerative changes (i.e., osteoarthritis).  T. 214, 222-24.

Anderson consulted numerous physicians concerning his back.  Consultant Dr. Balagtas and orthopaedist Dr. John Whalen agreed that Anderson's chronic back pain

---

[5]Central and foraminal narrowing, also called spinal stenosis, is spinal canal or foramina constriction resulting in back pain caused by pressure being exerted on the nerve roots.  THE MERCK MANUAL 477 (17th ed. 1999).

[6]Lumbar spondylosis is a "degenerative joint disease affecting the lumbar vertebrae and intervertebral disks, causing pain and stiffness . . . due to nerve root pressure by associated protruding disks or osteophytes."  DORLAND'S1564 (28th ed. 19.

[7]Spondylolisthesis occurs when one vertebra slips forward over another.  Id. at 1563.  The forward slippage causes the spinal canal to narrow leaving less room for the nerve roots, effectively pinching them.  See http://www.nlm.nih.gov/medlineplus/ency/article/001260.htm.

would limit his ability to work.  These limitations include decreased participation in activities requiring bending, lifting, prolonged sitting, and prolonged standing.  T. 161, 194.  However, Drs. Whalen and Balagtas found, that Anderson was not disabled and is fit for light duty work.  T.193-94, 160-61.

Anderson also suffered from a knee ailment which he claims has, in conjunction with his back, rendered him disabled.  On January 8, 2004, Anderson was seen by Dr. Paul P. Hospodar after his right knee gave out.  T. 178.  Dr. Hospodar suspected a medial meniscal tear, although a subsequent MRI was inconclusive.  T. 176-77.  Although Anderson attended physical therapy, his right knee remained aggravated so he underwent arthroscopic surgery on April 15, 2004.  T. 204-05.  The surgery revealed a medial meniscal tear, which was repaired.  Id.  Anderson underwent post-operative therapy and numerous examinations with orthopaedist Dr. John H. Kavanaugh.  T. 179, 195, 198, 199, 201.  Dr. Kavanaugh's most recent assessment was that Anderson had full range of motion in his knee and that any resulting pain was secondary to osteoarthritis.  T. 198.

### B. Severity

Anderson contends that the ALJ failed properly to assess the severity of his conditions.  The Commissioner contends that the ALJ properly evaluated the severity of Anderson's impairments.

As mentioned above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities.  See subsection IV(A) supra; 20

C.F.R. § 404.1521(a) (2003).  Where a claimant alleges multiple impairments, the court will consider "the combined effect of all [] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Id. § 404.1523.  An impairment, or combination thereof, is not severe if it does not impinge on one's "abilities and aptitudes necessary to do most jobs." Id. § 404.1521.  Basic work activities which are relevant for evaluating the severity of a physical impairment include "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. . . ." Id. § 404.1521(b)(1).

"The Social Security regulations list certain impairments, any of which is sufficient, at step three, to create an irrebuttable presumption of disability." DeChirico, 134 F.3d at 1180; see also 20 C.F.R. § 404.1520(d) (2003); Id. at pt. 404, subpt. P. App. 1 (2003)(listing of per se disabling ailments).  Additionally, the regulations state that "if an individual has an impairment that is 'equal to' a listed impairment," that individual is disabled regardless of his or her age, education, or work experience.  DeChirico, 134 F.3d at 1180 (quoting 20 C.F.R. § 404.1520(d) (2003)).

Anderson contends that his back and knee injuries, standing alone or in combination, constitute a disabling condition per se.  Both contentions are governed by the section on muscoskeletal loss of function.  20 C.F.R. pt. 404, subpt. P, App. 1.00 (2003).  In order for Anderson's chronic back pain to be considered a listed impairment, his disorder must "result[] in [the] compromise of a nerve root or [the] spinal cord." Id. at App. 1.04.  According to Anderson's medical records, the two listed muscoskeletal

impairments most closely related to his symptoms are nerve compression[8] and lumbar spinal stenosis.[9] Additionally, Anderson contends his knee ailments are encompassed within the listed impairments. Joint injuries qualify as a listed impairment when the individual suffers from a "gross anatomical deformity," including instability, and chronic joint pain with either the inability to ambulate effectively per 20 C.F.R. pt.404, subpt. P, App. 1.00(B)(2)(b) or the inability to perform fine and gross motor skills per 1.00(B)(2)(c). The inability to ambulate effectively is established by showing such things as the claimant (a) cannot travel or carry out routine daily activities without assistance, (b) must use assistive devices, or (c) is unable to walk a city block. Id. at App. 1.00(B)(2)(b)(2). The inability to perform fine and gross motor skills requires a "loss of function. . ." and "capab[ility] of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." Id. at App. 1.00(B)(2)(c). Examples include making meals, feeding oneself, and performing daily hygienic activities. Id.

The ALJ found that Anderson's impairments, chronic back pain and a torn meniscus, were severe within the meaning of the regulations. T. 15. However, the ALJ concluded that they were not among the listed impairments granting Anderson per se disability status. Id. Anderson contends that the ALJ was incorrect in his findings.

Here, there is substantial evidence in the record to support the ALJ's findings that Anderson did not suffer from a listed impairment. The list of impairments for back injuries

---

[8]This is characterized by limited ranges of motion and positive straight-leg raising. 20 C.F.R. pt. 404, subpt. P, App. 1.04(a)
[9]Stenosis is a narrowing "resulting in [the] inability to ambulate effectively." 20 C.F.R. pt. 404, subpt. P, App. 1.04(c)

9

required either nerve compression or stenosis.  The record illustrates that diagnostic testing and medical opinions confirmed there was neither nerve compression nor stenosis.  T. 16-17.  First, the record indicates that Anderson demonstrated a full, or nearly full, ranges of motion in his back and was consistently diagnosed with only low back pain. T. 161-62, 214, 222-24.  Furthermore, the record is devoid of any indication of narrowing or stenosis.  The January 2004 MRI showed disc bulging and herniation but no stenosis.  T. 128-29.  Additionally, consulting physician Dr. Balagtas stated that Anderson's pain was not due to disc space narrowing did not arise from a "musculoskeletal origin".  T. 161-62.

Second, there is also substantial evidence in the record to sustain the ALJ's findings that Anderson's knee ailment was not severe enough to qualify as a listed impairment.  As previously noted, the list of impairments requires a joint injury to result in the inability to ambulate effectively or perform fine or gross motor skills.  The record substantially supports the ALJ's determination that Anderson has neither result.  First, Anderson's knee injury had not resulted in an inability to ambulate effectively because he could still drive and carry out his daily activities, did not require any assistive devices, and could walk two city blocks before fatiguing.  T. 50, 42, 45.  Additionally, Dr. Kavanaugh's most recent assessment of Anderson indicated that Anderson had full range of motion in his knee.  T. 198.  Furthermore, Anderson's knee injury had not resulted in any motor deficiencies as he was still generally able to attend to his daily personal needs without assistance.  T. 48-49.

Finally, Anderson contends that the combination of both his back and knee injuries warrants a finding of a severe disability requiring benefits.  Based on the foregoing, however, it is clear that there is substantial evidence in the record to support the ALJ's

finding that, although both injuries were severe, their combined effect still fails to warrant a conclusion of disability per se.

Accordingly, it is recommended that the Commissioner's findings in this regard be affirmed.

### C. Subjective Complaints of Pain

Anderson contends that the ALJ's decision to discredit his subjective complaints of pain was in error. The Commissioner contends that the ALJ properly considered Anderson's symptoms.

The ALJ determines whether an ailment is an impairment based on a two-part test. First, the ALJ must decide, based upon objective medical evidence, whether "there [are] medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce [such] pain. . . ." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005); 20 C.F.R. § 404.1529 (2003).  This primary evaluation includes subjective complaints of pain.  20 C.F.R. § 404.1529 (2003). "'Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.'" Barringer, 358 F. Supp. 2d at 81 (quoting Crouch v. Comm'r of Soc. Sec. Admin., No. 6:01-CV-0899 (LEK/GJD), 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).

An ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the medical and other evidence.  20 C.F.R. § 404.1529

(2003).  "Pain itself may be so great as to merit a conclusion of disability where a medically ascertained impairment is found, even if the pain is not corroborated by objective medical findings."  Rivera v. Schweiker, 717 F.2d 719, 724 (2d Cir. 1983) (citing Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983)).  However, "disability requires more than mere inability to work without pain."  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  Pain is a subjective concept  "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  In the event there is "conflicting evidence about a [claimant's] pain, the ALJ must make credibility findings."  Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999) (citing Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983)).  Thus, the ALJ may reject the claims of disabling pain so long as the ALJ's decision is supported by substantial evidence.  Aponte v. Sec'y of HHS, 728 F.2d 588, 591 (2d Cir. 1984).

      The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978).  The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (I)  [The claimant's] daily activities;
>
> (ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . .

> pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

In this case, the ALJ concluded that Anderson's allegations of low back and knee pain were not substantiated by the objective medical evidence. T. 18-19. Anderson maintained a normal daily schedule of waking, eating breakfast, attending physical therapy or doing exercises at home, watching television, and caring for his cocker spaniel. T. 109. Additionally, Anderson still drove his car and ran errands, could walk two blocks before fatiguing, consistently climbed stairs with limited trouble, and performed his daily bathing and dressing activities independently with minor complaints regarding pain while putting his pants on. T. 50, 45, 57, 48, 51-52. Anderson had undergone physical therapy and chiropractics, which he claimed are "helping but . . . every day it's different." T. 52-53. Anderson claimed he needed to lie down every ninety minutes to alleviate his lower back pain. T. 53. This behavior throughout the course of an eight-hour work day would be unacceptable and imply that Anderson was not fit to perform any occupation. However, the ALJ relied on the determination of Anderson's physicians that Anderson could perform light duty work with some limitations. T. 18-19, 193-94, 160-61. The ALJ concluded that "[t]he claimant is partially credible but pain does not seem to be at the disabling level of

13

severity." T. 18. Based upon the foregoing, there is substantial evidence to support the ALJ's conclusion that Anderson's subjective complaints of pain were not at a disabling level.

Therefore, it is recommended that the Commissioner's determination on this ground be affirmed.

### D. Residual Functional Capacity

Anderson contends that substantial evidence does not support the ALJ's findings regarding his residual functional capacity ("RFC").

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945 (2003). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003).

Here, the ALJ concluded that Anderson's impairments did not prevent him from performing his past relevant work. T. 18. The ALJ found that Anderson had the RFC to perform light duty work-related functions "requir[ing] maximum lifting of 20 pounds and frequently lifting of 10 pounds . . . [t]he claimant should do no climbing, no balancing, no operating of foot controls, no kneeling, and no crawling." T. 18. This finding echoed the

14

medical opinions of Drs. Balagtas and Whalen.  T. 193-94, 160-61.  First, Dr. Balagtas determined that Anderson "would have <u>some</u> limitations in activities that require bending, lifting, prolonged sitting, and prolonged standing."  T. 161 (emphasis added).  Next, Dr. Whalen concluded that Anderson will have "restrictions of 40 pound lifting and limitation in terms of sitting and standing duration," for which the physician found Anderson "does not have a total disability" and "would be fit for lighter duty type work. . . ."  T. 193-94.  Additionally, a vocational expert appeared and testified that Anderson's past work as a senior computer operator was listed in the Dictionary of Occupational Titles ("DOT") as a light duty occupation and that Anderson was able to complete the tasks of a senior computer operator as outlined in the DOT.[10]  T. 59-61.  Thus, there is substantial evidence to support the ALJ's conclusion that Anderson could resume his past work based on the medical assessments of Drs. Balagtas and Whalen and the vocational expert's testimony.

Accordingly, it is recommended that the Commissioner's determination in this regard be affirmed.

### VI. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**, Anderson's motion for a finding of disability (Docket No. 8) be **DENIED**, and the

---

[10]Anderson claims that his job required consistent lifting of fifty pound boxes and pushing 900 pound bales of checks.  T. 54-55.  The vocational expert testifies that this behavior was atypical for a senior computer operator as envisioned by the DOT.  T. 59-60.  Thus, there is an inconsistency between the two as to what the job requirements were for a similarly situated computer operator in Anderson's position.

15

Commissioner's cross-motion (Docket No. 9) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: October 22, 2007
       Albany, New York

*David R. Homer*
United States Magistrate Judge